ATTORNEY FOR APPELLANT
Jim Brugh
Logansport, Indiana

ATTORNEY FOR APPELLEE
Derick W. Steele
Kokomo, Indiana

# In the
# Indiana Supreme Court

FILED
Aug 19 2008, 11:22 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 09S05-0803-CV-136

MARLA K. YOUNG,

*Appellant (Respondent Below),*

v.

TIMOTHY S. YOUNG,

*Appellee (Petitioner Below).*

_____

Appeal from the Cass Circuit Court, No. 09C01-0008-DR-93
The Honorable Julian L. Ridlen, Judge
_____

On Petition To Transfer from the Indiana Court of Appeals, No. 09A05-0701-CV-52
_____

**August 19, 2008**

**Shepard, Chief Justice.**


This appeal raises several important issues about child support. First, in a claim for Parenting Time Credit under the Child Support Guidelines, the word "overnight" means overnight and not something else. Second, business deductions taken by a spouse that may be ordinary for tax purposes are not necessarily determinative for child support purposes. Third, payments to a former spouse for division of property are not deductions for child support purposes.

**Facts and Procedural History**

Marla and Timothy Young married in 1988 and subsequently had three children. In August 2000, Timothy filed a petition for dissolution. In 2003, the trial court entered a decree of dissolution, awarding the parties joint custody of the three children with physical custody of the children awarded to Marla. It set Timothy's parenting time as Tuesdays and Thursdays after school until 7:30 p.m. and every other weekend, holiday, and vacation.

Because both parties were self-employed and their incomes were expected to vary before stabilizing, the parties agreed that Timothy's weekly child support obligation would be $150 for two years and would then be recalculated based upon the parties' income tax returns. In September 2005, Marla requested that the court schedule a hearing for the purpose of such recalculation. After a hearing, the trial court set Timothy's revised weekly child support obligation at $327.20. In calculating this amount, the court awarded Timothy parenting time credit for 104 overnights, 52 of which were for actual overnight stays and 52 of which were for the two additional evenings per week Timothy spent with the children. The court also deducted the payments Timothy made to Marla as part of the parties' property settlement from Timothy's income in calculating child support.

Marla appealed, arguing that evening visits did not qualify for parenting time credit and that the property settlement payments should not have been deducted from Timothy's income. The Court of Appeals affirmed the trial court's decision on both of these issues. Young v. Young, 881 N.E.2d 1, 5-6, 9 (Ind. Ct. App. 2007).[1] We granted transfer.

---

[1] On appeal, Marla also argued that the trial court erred by imputing an income of $54,500 to her, averaging Timothy's 2004 and 2005 incomes in calculating his child support obligation, and crediting Timothy for the cost of the children's healthcare insurance premium. We summarily affirm the disposition of these issues as made by the Court of Appeals. Ind. Appellate Rule 58(A).

**Standard of Review**

A trial court's calculation of child support is presumptively valid. <u>Kondamuri v. Kondamuri</u>, 852 N.E.2d 939 (Ind. Ct. App. 2006). We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law. Ind. Trial Rule 52(A); <u>McGinley-Ellis v. Ellis</u>, 638 N.E.2d 1249 (Ind. 1994). A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court. <u>Id.</u> at 1252. When a trial court enters formal findings, we observe the following regimen:

> courts reviewing support orders contained in judgments entered under T.R. 52 are not at liberty simply to determine whether the facts and circumstances contained in the record support the judgment. Rather the evidence must support the specific findings made by the court which in turn must support the judgment . . . . [I]f the findings and conclusions entered by the court, even when construed most favorably toward the judgment, are clearly inconsistent with it, the decision must be set aside regardless of whether there was evidence adduced at trial which would have been sufficient to sustain the decision.

<u>Id.</u>

### I.   Do Evening Visits Count Toward the Parenting Time Credit?

Indiana Child Support Guideline 3(G)(4) provides that trial courts "may grant the noncustodial parent a credit toward his or her weekly child support obligation . . . based upon the calculation from a Parenting Time Credit Worksheet." In calculating Timothy's child support obligation, the trial court awarded Timothy parenting time credit for 104 overnights, 52 of which were for actual overnight stays and 52 of which were for the two additional evenings per week Timothy spends with the children from 3 p.m. until 7:30 p.m.

Marla argues that the Guidelines do not permit parenting time credit for non-overnight visits. (Appellant's Br. at 34.) Timothy argues that the trial court correctly awarded him this parenting time credit because during the Tuesday and Thursday evening visits he performs "overnight duties," such as providing the children with transportation from school and to and

from their activities, feeding them, doing homework with them, and returning them home for bed. (Appellee's Br. at 10.)

The Child Support Guidelines contain a formula for calculating parenting time credit based upon the total number of "overnights" per year that the noncustodial parent spends with the children. Child Supp. G. 6 Table PT. In explaining the term "overnight," the commentary to the guidelines provides that

> [a]n *overnight* will not always translate into a twenty-four hour block of time with all of the attendant costs and responsibilities. It should include, however, the costs of feeding and transporting the child, attending to school work and the like. Merely providing a child with a place to sleep in order to obtain a credit is prohibited.

Child Supp. G. 6 cmt.

We take the gist of this comment to be that not all visits in which a child stays overnight may qualify for the parenting time credit. Still, neither this comment nor any other portion of the guidelines suggests that a visit may qualify as an overnight if the child does not physically stay overnight with the noncustodial parent. If the able and careful drafters of the guidelines had intended for non-overnight visits in which the noncustodial parent provides the children with transportation from school and to and from their activities, feeds them, and does homework with them to qualify for parenting time credit, the guidelines could have easily included those visits in the formula.

The rationale behind the parenting time credit is that overnight visits with the noncustodial parent may alter some of the financial burden of the custodial and noncustodial parents in caring for the children. Because calculating the amount of financial burden alleviated by an overnight visit is difficult, the guidelines provide a standardized parenting time credit formula. Credit is not provided for evening visits because watching the children during study hours typically does little to displace the relative parental burdens. Accordingly, the number of visits a noncustodial parent receives parenting time credit for cannot exceed the number of visits in which the children physically stay overnight with the parent.

On the other hand, if after calculating the noncustodial parent's child support obligation the court concludes that in a particular case application of the guideline amount would be unreasonable, unjust, or inappropriate, the court may deviate from that amount by entering a written finding articulating the factual circumstances supporting that conclusion. Ind. Child Support Rule 3. Noncustodial parents may be entitled to a deviation for non-overnight visits if the facts and circumstances of the case warrant it. Such facts might include, for example, the need to leave work early every day in order to pick the children up from school.

## II.  Business Deductions and Gross Income

Marla contends that the trial court erred by using the adjusted gross income figure from Timothy's tax returns without adding back any of the depreciation or other deductions taken for tax purposes as his income for calculating child support. Timothy argues that it was within the trial court's discretion to use this amount.

Calculating gross income for the self-employed presents unique problems and calls for careful review of expenses. Child Supp. G. 3(A) cmt. 2(a). Guideline 3(A)(2) addresses the calculation of gross income for self-employed persons:

> Weekly Gross Income from self-employment [or] operation of a business . . . is defined as gross receipts minus ordinary and necessary expenses. In general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income. These expenditures may include a reasonable yearly deduction for necessary capital expenditures. Weekly gross income from self-employment may differ from a determination of business income for tax purposes.

Child Supp. G. 3(A)(2). The commentary to guideline 3(A) further provides that "[w]hile income tax returns may be helpful in arriving at weekly gross income for a self-employed person, the deductions allowed by the Guidelines may differ significantly from those allowed for tax purposes." Child Supp. G. 3(A) cmt. 2(a).

Trial courts have discretion in determining which business expenses are deductible for calculating the child support obligation of self-employed persons, but the court must engage in a careful review of the facts and circumstances in making its determination. The adjusted gross income from a party's tax return is a useful point of reference, but the court must evaluate the deductions taken in arriving at that figure.

In this case, using the adjusted gross income from Timothy's tax return for calculation of his child support obligation was error on multiple grounds.

For example, Timothy's adjusted gross income figure includes a deduction of over $7,000 that Timothy invested in his retirement account. (App. at 239.) Contributions to retirement accounts are usually a wise move, but they certainly do not qualify as an ordinary and necessary business expense that should be deductible for determining child support.

Moreover, the adjusted gross income figure from Timothy's tax returns also includes deductions of over $24,000 for redemption of Marla's interest in the partnership, which Marla received as part of the parties' property settlement. (Id. at 152-53.) Parties are not permitted to deduct the amount their spouse received in the property settlement from their income for calculating child support.

And further, in using the adjusted gross income figure from Timothy's tax return in calculating his child support, the court permitted the entirety of the depreciation Timothy deducted on his tax returns to be deducted from his income for child support purposes with no apparent consideration of whether the depreciation was appropriate or was overly accelerated for favorable tax treatment. We examined this phenomenon in Glass v. Oeder, 716 N.E.2d 413, 417 (Ind. 1999), in which Justice Boehm wrote, "In general, we would assume that allowable depreciation under methods designed to encourage investment may be overstated for child support purposes." Whereas the cost of capital can be an appropriate deduction, the trial court must carefully review these deductions to ensure they are reasonable out-of-pocket expenditures necessary to produce income. Child Supp. G. 3(A)(2).

6

Accordingly, we remand this issue to the trial court for reconsideration as to which of Timothy's deductions were proper in calculating his income for child support purposes.

### III.    Are Payments Under a Property Settlement Included for Child Support Calculations?

As part of the division of marital property, Timothy agreed to pay Marla maintenance of $565,000 at 6.5% interest over fifteen years.[2]  The trial court deducted this yearly payment from Timothy's income in its child support computation.  Marla argues that payments made pursuant to marital property settlements should not be deductible for child support purposes.

The commentary to the guidelines address the issue of spousal maintenance and property settlements in the context of payments made to a party's former spouse (i.e., a former spouse who is not the parent of the child whose support is being determined).  The commentary to the guidelines states:

> The worksheet provides a deduction for spousal maintenance paid as a result of a former marriage . . . .  Caution should be taken to assure that any credit taken is for maintenance and not for periodic payments as the result of a property settlement . . . .  No such deduction is given for amounts paid by an obligor as the result of a property settlement resulting from a former marriage . . . .

Child Supp. G. 2 cmt.

We see no reason why payments made pursuant to a property settlement between the parents of the child should be treated differently.  Presumably, marital assets will be equitably divided between the parties to a property settlement.  If one party chooses to keep the entirety of the physical assets by paying the other spouse for her share of the assets' value, the party who keeps the physical assets should not also be entitled to a deduction for the value of those assets that is being paid to the spouse.  Otherwise, the party would receive the benefit of both possessing the assets and the deduction.

---

[2] Neither party disputes that these payments are in lieu of a lump sum property distribution.  (Appellant's Br. at 6; Appellee's Br. at 1.)

For example, if Father decides he wants to keep the marital sofa (or the family business, for that matter) by paying Mother for half of its value, he should not be able thereafter to deduct half the value of the sofa from his income in computing child support. Otherwise, father would be double-dipping, receiving both the sofa (or the business) and the deduction.

In this case, Timothy decided to keep certain marital business assets by buying out Marla's share. The fact that he kept the business assets by paying her for her portion of the businesses' value over fifteen years does not entitle Timothy to a deduction for the payments. The fact that the parties structured these payments as maintenance for tax purposes does not affect this outcome. Presumably, both parties benefited from this tax treatment. Just as the guidelines disallow deductions for payments made to former spouses as part of a property settlement, even if those payments were classified as maintenance by the parties, so too do we disallow deductions for property settlements made between a child's parents. Accordingly, Timothy is not entitled to a deduction for the payments he makes pursuant to the parties' marital property settlement when calculating his child support obligation.

### Conclusion

We remand with direction to reexamine the child support order as respects these three elements.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.