**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LILABERDIA BATTIES**
Batties & Associates
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MELBA DELORIS POLK-KING, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1305-DR-248 |
| | ) | |
| LAWRENCE DELOROSA KING, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
The Honorable Victoria M. Ransberger, Magistrate
Cause No. 49D07-1202-DR-7753

**January 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Melba Deloris Polk-King ("Wife") appeals the calculation of the child support obligation and the division of marital assets in the dissolution decree dissolving her marriage to Lawrence Delorosa King ("Husband") following a final hearing. Polk-King presents two issues on appeal:

1. Whether the dissolution court erred when it ordered Husband's child support obligation for two children to be calculated using ninety-eight overnight visitations per year when Husband has overnight visitation with only one of the children.

2. Whether the dissolution court erred when it did not include some of Wife's debts in the marital pot subject to distribution and, as a result, abused its discretion when it divided the marital estate.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on October 21, 1994. They have two children: L.D.K., born April 29, 1995, and L.A.K., born November 13, 1997. Husband and Wife physically separated in 2010, and Wife filed a petition for dissolution on February 27, 2012. Wife's petition for dissolution included a request for provisional orders. Following a preliminary hearing, the dissolution court entered a provisional order that, in relevant part, granted Husband parenting time with both children according to the Indiana Parenting Time Guidelines ("Guidelines") and set his weekly child support obligation at $150 retroactive to the date Wife filed the petition for dissolution.

The dissolution court held the final hearing on April 2, 2013. No party requested special findings or conclusions thereon. Following the final hearing and at the dissolution court's request, the parties each tendered a proposed decree. And on April

26, the dissolution court entered its decree dissolving the marriage ("Decree"). In relevant part, the Decree awarded sole custody of the children to Wife, gave Husband parenting time with L.A.K. pursuant to the Guidelines, and ordered Husband to continue to pay $150 per week for child support through an income withholding order. The Decree made no provision for parenting time with L.D.K., who by then was eighteen years old. With regard to the marital estate, the dissolution court found as follows:

> The Court has carefully considered the exhibits and testimony of the parties as to the marital estate. Wife has claimed several debts totaling over $34,000.00. However, even when discovery was served on March 13, 2012, two weeks after Wife filed for divorce, Wife never produced proof of debt on or near the date of filing for Kohl[']s, Citi Bank, US Bank, Macy's and Bank of America. This court granted a Motion to Compel and Wife finally responded on August 28, 2012. Wife answered interrogatories with amounts allegedly owed on [the] date of filing but never produced documentation over more than a year after her filing of the dissolution for the 5 debts claimed as denoted above. No documentation was produced at trial on April 2, 2013. The Court does not include these purported debts in the marital estate to be divided which does result in a deviation of the presumptive equal division if the debts were actually incurred in the amounts as requested by Wife.

Appellant's App. at 9-10. Having excluded Wife's alleged debts from the marital estate for purposes of division, the dissolution court then divided the remainder of the marital estate equally between the parties. Wife now appeals.

## DISCUSSION AND DECISION

### Issue One: Child Support Obligation

A trial court's determination of child support obligations is presumptively valid and given broad deference upon appeal. In re Marriage of Blanford, 937 N.E.2d 356, 360 (Ind. Ct. App. 2010) (citing Young v. Young, 891 N.E.2d 1045, 1047 (Ind. 2008)). We reverse such decisions only where they are clearly erroneous or contrary to law. Id. A

3

decision is clearly erroneous when it is clearly against the logic and effect of the facts and circumstances before the trial court. Id. However, Husband has not filed a brief on appeal. Thus, we may reverse the trial court's decision upon a prima facie showing of reversible error. Wright v. Wright, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). Prima facie error is "error at first sight, on first appearance, or on the face of it." Van Wieren v. Van Wieren, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006).

A trial court has the discretion to diverge from the Guidelines when the evidence leads the trial court to conclude that the Guideline amount would be unjust. Ind. Child Support Guideline 3. When a trial court does diverge from the Guidelines, it must explain its reasons for doing so in writing. Id.; see also Child Supp. G. 3(F), Commentary ("[i]f the court determines that the Guideline amount is unjust or inappropriate, a written finding shall be made setting forth the actual basis for deviation from the Guideline amount. A simple finding . . . is sufficient.").

Here, Wife takes issue with the trial court's calculation of Husband's child support obligation for the parties' two children when the court ordered overnight visitation with only one of the children. In particular, Wife argues that giving Husband credit for ninety-eight overnights on the worksheet gave him too much credit because the Worksheet improperly gives him credit for overnight visitation with two children and, thus, inflates the credit he receives for such visitation on the worksheet.[1] We must agree.

---

[1] Wife also contends that, based on the overnight visitation Husband has exercised since the parties' physical separation, she does not anticipate that he will fully exercise his overnight visitation. Because we conclude below that Wife has shown prima facie error in the calculation of the child support obligation, we need not consider Wife's argument based on Husband's past visitation record.

The Guidelines anticipate that trial courts will use a single Worksheet for all of the children in a family. And when more than one child is involved, the Guidelines presume that each child will have the same number of overnight stays with the non-custodial parent. Id.

But the Guidelines do not contemplate situations in which fewer than all of the children for whom support will be paid will have overnight visitation. We addressed such a situation in In re Blanford. There, the dissolution court awarded the noncustodial parent overnight visitation with only one of the parties' two children. Because only one child was to have overnight visitation, the court calculated child support using two child support worksheets, one showing credit for overnight visitation and the other giving no overnight visitation credit.

On appeal we acknowledged the shortcomings in the Guidelines where parents have multiple children and fewer than all of them will have overnight visitation. Specifically, the Guidelines increase the basic support obligation for each additional child by fifty percent. Blanford, 937 N.E.2d at 361 n.1. But Guidelines Table PT, which includes a factor for duplicated expenses for overnight visitation, does not differentiate between the number of children participating in visitation. Instead, it merely designates the visitation factor based on the number of overnights, and that factor is applied as one of the adjustments to the child support obligation. Id. at 362; see also Child Supp. G. 6, Commentary.

In Blanford, we held that the use of a separate worksheet for each child treated each child as an only child under the Guidelines and, therefore, resulted in a greater child

support obligation than if support for both children had been calculated using a single worksheet. 937 N.E.2d at 361. But we also acknowledged that using a single Worksheet for both children and averaging the parenting time between two children might allow the non-custodial parent either too much or too little credit in calculating his support obligations because Table PT merely supplies a factor for crediting duplicated expenses without regard to the number of children having overnight visitation. Id. Therefore, we reversed the child support obligation and remanded with the following instructions:

> [U]se one worksheet accounting for both children, rather than one worksheet for each child, and . . . use the basic support obligation for two children at the appropriate weekly income level for [the father and the mother]. The trial court should then calculate the overnight parenting time credit using the basic support obligation for two children, and may adjust the number of days of overnight credit to reach what appears to be an appropriate result for setting [the father's] weekly support obligation. Because the Guidelines do not afford a basis on which to set the number of days of overnight credit, the trial court must explain the reasons for its use of the specific number of days of overnight credit in its order.

Id.

Here, the dissolution court used a single Worksheet for both children. That Worksheet correctly reflects the child support for two children before adjustments. But the Worksheet gave Husband credit for ninety-eight overnights with both children, while the Decree awarded overnights with only one child. As explained in Blanford, calculating the child support obligation in that manner gave Husband more credit than he was due for overnight visitation with only one of the children. See id. Wife has shown prima facie error in the child support obligation ordered under the Decree.

We reverse that part of the Decree that sets Husband's child support obligation and remand for the dissolution court to recalculate child support in accordance with this

6

memorandum decision. We acknowledge that our instructions direct the dissolution court to use a different method of calculating the basic support obligation than is apparent on the face of the Child Support Guidelines. In essence, we are instructing the dissolution court to deviate from the Guidelines. See id. The court must then explain its reasons for that deviation as explained above. See Child Supp. R. 3; Child. Supp. G. 3(F), Commentary. The deviation is necessary because the Guidelines do not contemplate or provide for these circumstances.

## Issue Two: Division of the Marital Estate

We apply a strict standard of review to a dissolution court's distribution of property. Luttrell v. Luttrell, 994 N.E.2d 298, 301 (Ind. Ct. App. 2013) (citation omitted). The party challenging the property division must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. Id. We will reverse a property distribution only if there is no rational basis for the award—that is, if the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. Id. We do not reweigh the evidence, and we consider only the evidence favorable to the dissolution court's decision. Id. We will also reverse where the trial court has misinterpreted the law or has disregarded evidence of statutory factors. Id. However, again, because Husband did not file an appellee's brief, Wife need only show prima facie error. Wright, 782 N.E.2d at 366.

Wife contends that the dissolution court erred when it identified marital property subject to division and, as a result, when it divided the marital property. It is well-

established that all property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a); Beard v. Beard, 758 N.E.2d 1019, 1025 (Ind. Ct. App. 2001), trans. denied. This "one-pot" theory ensures that all assets are subject to the dissolution court's power to divide and award. Thompson v. Thompson, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004), trans. denied. The dissolution court has no authority to exclude or set aside marital property but must divide all property. Moore v. Moore, 695 N.E.2d 1004, 1010 (Ind. Ct. App. 1998).

Indiana Code Section 31-15-7-4 provides, in part:

(a) In an action for dissolution of marriage under [Indiana Code Section] 31-15-2-2, the court shall divide the property of the parties, whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

(A) after the marriage; and

(B) before final separation of the parties; or

(3) acquired by their joint efforts.

And Indiana Code Section 31-15-7-5 provides: "The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence . . . that an equal division would not be just and reasonable[.]"

After determining what constitutes marital property, the trial court must then divide the marital property under the presumption that an equal split is just and

reasonable, but that presumption may be rebutted.  <u>See</u> Ind. Code § 31-15-7-5.[2]  If the trial court deviates from this presumption, it must state why it did so.  <u>In re Lang</u>, 668 N.E.2d 285, 290 (Ind. Ct. App. 1996).  A party who challenges the trial court's division of the marital estate must overcome a strong presumption that the court considered and complied with the applicable statute.  <u>Frazier v. Frazier</u>, 737 N.E.2d 1220, 1223 (Ind. Ct. App. 2000).

Wife argues that the dissolution court erred because it did not equally divide the marital estate between the parties.  Specifically, she maintains that she submitted a list of marital debts, several of which the dissolution court erroneously failed to include in the marital pot subject to division.  As a result of having failed to include those debts, she argues, the dissolution court did not divide the estate equally as required by Section 31-15-7-5, despite the purportedly equal division in the Decree, nor did the court show that the presumption against an equal division had been rebutted.  We cannot agree.

On May 29, 2012, Wife filed her financial declaration, in which she identified marital debts owed to Lowes, Citi Bank, Kohl's, Dell, Macy's, US Bank, and Bank of America.  In June, she listed the same creditors in her answers to Husband's interrogatories and response to request for production of documents.  However, Wife did not attach statements from any of the creditors as requested in the request for production.  Husband's subsequent informal efforts to obtain the documentation and other information requested from Wife in discovery were unsuccessful.  Thus, on August 9, he filed a motion to compel discovery.  On August 14, the dissolution court granted Husband's

---

[2]  Indiana Code Section 31-15-7-5 lists examples of factors that may be used to rebut the presumption that an equal division of the marital estate is just and reasonable, but those factors do not apply, nor are they argued, in this case.

motion and ordered Wife to provide the requested discovery within fourteen days. Later that month, Wife filed amended discovery responses, but she did not include documentation of the purported marital debts to Citi Bank, Kohl's, Macy's, US Bank, and Bank of America.

At the final hearing in April 2013, Wife testified as to the balances owed to Lowes, Citi Bank, Kohl's, Dell, Macy's, US Bank, and Bank of America. Husband objected, arguing that throughout the proceedings he had sought copies of credit card statements establishing those debts but had received statements only from Lowes and Dell. The court overruled Husband's objection to the admission of Wife's testimony on the balances owed.

However, in entering the Decree, the dissolution court specifically found that Wife had "never produced proof of debt on or near [the] date of filing for Kohl[']s, Citi Bank, US Bank, Macy's, and Bank of America" despite an order compelling her to do so. Appellant's App. at 2-3. Wife argued at the final hearing that the statements were unavailable because Wife discarded statements after she made payments. However, a period of ten months had passed between the first discovery request and the final hearing. If the debts continued to exist at the time of the final hearing, Wife must have received creditor statements during that period, but she did not provide them. We note that she also had sufficient time to obtain duplicates. Again, the recipient of a request for production of documents must provide documents within the scope of Trial Rule 26(B) that are in the recipient's "possession, custody, or control[.]" Ind. Trial Rule 34(A)(1). Although Wife denied having copies of the disputed charge account statements, those

10

documents were within her control in that she could have requested and obtained copies from the creditors.

Based on these facts, the dissolution court acknowledged that the "purported debts" might exist, but the court declined to divide them equally between the parties: "The Court does not include these purported debts in the marital estate to be divided which does result in a deviation of [sic] the presumptive equal division if the debts were actually incurred in the amounts as requested by Wife." Appellant's App. at 10.

On its face, the Decree is inherently inconsistent when it purports to divide the marital estate equally but also provides, in a single sentence that it "did not include these purported debts in the marital estate to be divided" and that that exclusion "result[ed] in a deviation of [sic] the presumption equal division if the debts were actually incurred in the amounts as requested by Wife." Appellant's App. at 10. The Decree appears to exclude the debts from Kohl's, Citi Bank, US Bank, Macy's, and Bank of America from the marital pot and then divide the remainder of the marital estate equally between the parties. But the trial court also acknowledged that it had deviated from the presumption of an equal division of the marital estate. In order for a deviation from an equal division to have occurred, the dissolution court must have considered debts identified but not proved by Wife to be part of the marital estate and then set them over to Wife without an equal amount set over to Husband. Again, such a deviation is permissible if the presumption of an equal division is rebutted. Ind. Code § 31-15-7-5.

We conclude that the dissolution court included Wife's debts in the marital pot but then deviated from the statutory presumption of an equal division because Wife did not

11

produce proof of those debts. On appeal, Wife confuses the court's ruling admitting her testimony on the amounts of the debts in dispute as a judicial recognition of those debts. Wife is incorrect. While the Decree is not artfully drafted, when read as a whole it identifies all of the marital property as included in the marital pot, including the debts Wife asserts were excluded; sets those debts over to Wife without an equal offset to Husband due to Wife's failure of proof; and then divides the remainder of the estate equally between the parties. Wife has not shown error on its face with regard to the identification of the marital estate and its division.

Finally, in a single sentence, Wife also contends that the dissolution court should have included in the marital pot Husband's withdrawal of $105,000 from his 401(k) during the pendency of the action. But Wife does not support that contention with cogent argument or citations to supporting authority or to the record. As such, the argument is waived. See Ind. Appellate Rule 46(A)(8)(a).

Affirmed in part, reversed in part, and remanded with instructions.

CRONE, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

MELBA DELORES POLK KING, )
)
    Appellant-Petitioner, )
)
        vs. )    No. 49A05-1305-DR-248
)
LAWRENCE DELOROSA KING, )
)
    Appellee-Respondent. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
The Honorable Victoria M. Ransberger, Magistrate
Cause No. 49D07-1202-DR-7753

**BAKER, Judge, concurring in part and dissenting in part**

While I concur with the majority that the trial court correctly divided the marital estate, I am forced to part ways with the majority's determination that the trial court erred in calculating Husband's support obligation.

The trial court heard evidence regarding the visitation and overnight visits that Husband had with children. Although there is no written finding regarding the trial court's decision to deviate from the guidelines, I would suggest that the trial court did in fact have a valid reason for doing so. In my view, reversing the trial court's determination is not the most effective avenue for determining the proper amount of

support that Husband should pay. Rather, I would remand this cause to the trial court with instructions that it enter a finding as to why it deviated from the guidelines. See Claypool v. Claypool, 712 N.E.2d 1104, 1107-1108 (Ind. Ct. App. 1999) (concluding that although the trial court may have been justified in deviating from the guidelines, it was clearly erroneous without a specific finding, thereby requiring this court to remand to the trial court to set forth reasons for any deviations from the guidelines).