## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 19 2021, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Shana D. Paula
Danica L. Eyler
Jacob C. Salathe
Webster and Garino, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE

Philip C. Sheward
Silvia B. Miller
Allen Wellman McNew Harvey, LLP
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jessica Kulibert,<br>*Appellant/Petitioner,*<br><br>v.<br><br>Timothy Kulibert,<br>*Appellee/Respondent.* | January 19, 2021<br>Court of Appeals Case No.<br>20A-DR-1465<br>Appeal from the Hancock Circuit Court<br>The Hon. R. Scott Sirk, Judge<br>The Hon. Cody Coombs, Commissioner<br>Trial Court Cause No.<br>30C01-1609-DR-1465 |

**Bradford, Chief Judge.**

# Case Summary

Jessica and Timothy Kulibert ("Mother" and "Father") were married in 2007 and had two children while married ("the Children"). In 2016, Mother petitioned for dissolution of her marriage to Father, and the trial court issued its dissolution decree in November of 2018. In its dissolution decree, the trial court, *inter alia*, awarded Father primary physical custody of the Children and ordered Mother to pay $244.00 per week in child support to be reduced later to $161.00 per week. The reduction was due to a credit Mother was to receive for overnight visitation with the Children when it resumed. While the credit was eventually applied, the overnight visitation never actually occurred. Meanwhile, Mother was not granted a credit against her child-support obligation for social security disability ("SSD") benefits received by Father on behalf of the Children by virtue of his being the custodial parent.

In January of 2020, Mother petitioned for a modification of child support to reflect the SSD credit she had not been receiving and to have it applied retroactively to the date of the dissolution decree. While Father agreed that Mother was entitled to receive the SSD credit, he noted that Mother had been receiving the overnights credit to which she was not entitled and argued that the two errors effectively cancelled each other out in that correcting both would not alter Mother's child-support obligation more than the 20% required to change her obligation. In July of 2020, the trial court agreed with Father and denied Mother's petition to modify child support. Mother argues that the trial court abused its discretion in denying her petition to have her SSD credit applied

retroactively against her child-support obligation. Because we disagree, we affirm.

## Facts and Procedural History

[3] On September 30, 2016, Mother petitioned for the dissolution of her marriage to Father, to whom she had been married since July of 2007 and with whom she had the Children. On September 14, 2018, and October 19, 2018, the trial court held the final hearing on the dissolution and other pending matters. On November 26, 2018, the trial court issued its dissolution decree, in which it, *inter alia*, (1) took notice of two pending children-in-need-of-services ("CHINS") cases involving the Children; (2) awarded primary physical custody to Father; and (3) set Mother's weekly child-support payment at $244.00 per week, to be lowered again to $161.00 per week upon resolution of the CHINS cases. The lowering of Mother's obligation was on the basis that overnight visits would resume when the CHINS cases were resolved, allowing her to receive a weekly credit of $82.78. Although the credit was eventually applied, overnight visitation did not resume.

[4] On January 23, 2020, Mother moved for modification of child support, requesting a retroactive modification of support to take into consideration that Father had been receiving SSD benefits on behalf of the Children but that those benefits had not been included in the trial court's calculation of child support on November 26, 2018. On June 5, 2020, the trial court held a hearing on Mother's motion to modify child support. During the June 5, 2020, hearing, Mother orally withdrew her motion to modify, stating "we don't think there's

been a 20% uh difference making a substantial change in circumstances[.]" Tr. Vol. II p. 7. Mother nonetheless argued that the SSD benefits received by Father should be retroactively applied to modify Mother's child-support obligation back to July of 2018. Father testified that while Mother had been receiving credit for overnight visits pursuant to the dissolution decree, no such visits had actually occurred. While Father conceded that Mother was entitled to a credit for the SSD payments made to him, he argued that the error was effectively cancelled out by her erroneous receipt of a credit for overnight visits that had not actually occurred.

[5] On July 9, 2020, the trial court denied Mother's motion to modify child support in an order that provides, in part, as follows:

> 8. The original child support obligation calculated by the Court in its Decree of Dissolution included an incorrect credit for Mother of one hundred four (104) overnights with the children even though Mother was not and has not been exercising any overnight parenting time with the children. If the court corrects the overnight credit error and equitably applies that correction retroactively back to the date of the Decree, Mother's child support obligation would increase in an amount nearly equal to the amount of SSDI periodic payments received by Father on behalf of the children. A retroactive application of periodic SSDI payments received by Father and a retroactive correction of Mother's child support obligation would leave Mother's arrearage nearly identical to what it is now.
>
> 9. If the Court were to grant Mother's motion to Modify Support, Mother's child support obligation would increase to $333.51 per week and the $156.00 per week that Father receives in SSDI payments would then reduce Mother's child support obligation to $177.23 per week—an amount less than 20% difference from Mother's current child support obligation [of $161.00 per week].

Appellee's App. pp. 52–53.

# Discussion and Decision

## I. Subject-Matter Jurisdiction and Waiver

[6] Father contends that we do not have jurisdiction over Mother's appeal because she is actually appealing from the dissolution decree issued in November of 2018, rendering her appeal untimely. Indiana Appellate Rule 9(A)(1) provides, in part, that "[a] party initiates an appeal by filing a Notice of Appeal with the Clerk (as defined in Rule 2(D)) within thirty (30) days after the entry of a Final Judgment is noted in the Chronological Case Summary." We conclude, however, that Father's characterization of the record is not accurate. While it is true that Mother takes issue with a ruling that appeared first in the dissolution decree, she is actually appealing from the trial court's denial of her motion to modify child support, from which there is no question she timely appealed.

[7] Father also contends that Mother has waived her arguments for appellate review for failing to raise them in the trial court. It is generally true that an issue raised for the first time on appeal is waived for review. *See, e.g.*, *Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) ("And appellate review presupposes that a litigant's arguments have been raised and considered in the trial court."). Mother's core argument, *i.e.*, that she has improperly been denied a credit against her child-support obligation by virtue of SSD payments made to Father, was, at the very least, raised and litigated during the trial court's evaluation of her motion to modify child support, the denial of which she now

appeals. Father has failed to establish either that we lack jurisdiction over Mother's appeal or that she has waived her arguments for appellate review.

## II. Whether the Trial Court Abused its Discretion in Denying Mother's Motion for Modification of Child Support

[8] Where, as apparently happened here, the trial court *sua sponte* enters specific findings of fact and conclusions, we review its findings and conclusions to determine whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). We will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Id*. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake was made. *Id*. We neither reweigh the evidence nor assess the witnesses' credibility, and consider only the evidence most favorable to the judgment. *Id*. Moreover,

> findings made *sua sponte* control only as to the issues they cover[,] and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence.

*Id*. (citation omitted).

[9] Indiana Code section 31-16-8-1 provides, in part, as follows:

> (a) Provisions of an order with respect to child support or an order for maintenance […] may be modified or revoked.

> (b) Except as provided in section 2 of this chapter, and subject to subsection (d), modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

   (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

   (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[10]     Moreover,

[a] trial court's calculation of child support is presumptively valid. *Young v. Young,* 891 N.E.2d 1045, 1047 (Ind. 2008). We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law. Ind. Trial Rule 52(A); *Young,* 891 N.E.2d at 1047. A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *Young,* 891 N.E.2d at 1047. When a trial court enters formal findings, we observe the following regimen:

   [C]ourts reviewing support orders contained in judgments entered under T.R. 52 are not at liberty simply to determine whether the facts and circumstances contained in the record support the judgment. Rather the evidence must support the specific findings made by the court which in turn must support the judgment.... [I]f the findings and conclusions entered by the court, even when construed most favorably toward the judgment, are clearly inconsistent with it, the decision must be set aside regardless of whether there was evidence adduced at trial which would have been sufficient to sustain the decision.

*Id.* (quotation omitted).

*Ashworth v. Ehrgott*, 934 N.E.2d 152, 157–58 (Ind. Ct. App. 2010). As we have noted, the Indiana Supreme Court has "fully endorsed a flexible methodology that allows a trial court to use its discretion when crediting a non-custodial parent's child support obligation." *Barrand v. Martin*, 120 N.E.3d 565, 572 (Ind. Ct. App. 2019) (citing *Johnson v. Johnson*, 999 N.E.2d 56, 62 (Ind. 2013)), *trans. denied*.

[11] Here, the trial court's judgment was based on its findings that (1) Mother had not been receiving credit for the $156.28 per week in SSD benefits received by Father but that (2) Mother had been receiving credit for overnight visits that had not actually occurred. The upshot of this is that, had Mother been given credit for the SSD payments but denied credit for overnights, her weekly child-support payment would have been $177.23 ($331.51-$156.28) instead of the $161.00 she had been paying. There does not seem to be any dispute about any of this: the parties agree that Mother is entitled to receive a credit for the SSD payments to Father, and Mother does not even argue that she is—or ever was—actually entitled to receive the overnight-visitation credit she has been receiving from some point after November of 2018.

[12] The question is whether the trial court's resolution—concluding that two errors essentially balanced out—amounts to an abuse of discretion. Mother first argues that the trial court abused its discretion in *sua sponte* taking the overnights credit into account. Father, however, specifically brought the overnights credit to the trial court's attention, putting the issue squarely before the court. Mother also notes that she was not actually arguing for a

modification of child support below, seeking only that the mandatory SSD credit be retroactively applied to her previously-calculated obligation. However Mother characterizes her argument in the trial court, she was seeking to have her weekly child-support payments reduced and have that reduction retroactively applied; in other words, a request to modify child support. Finally, Mother argues that the trial court abused its discretion in concluding that the two continuing errors more-or-less cancelled each other out. Mother, however, cites no authority for this proposition, and our research has uncovered none.

[13] To get straight to the point, Mother is asking nothing more or less than for us to correct the continuing error in Father's favor while ignoring the continuing error in her favor. We do not understand how that could be seen as anything other than a windfall for her, not to mention a detriment to the Children. As mentioned, the Indiana Supreme Court has emphasized that trial courts may take a flexible approach to child-support issues, *see Johnson*, 999 N.E.2d at 62, and it seems to us that the trial court effectively employed that flexibility here. While we acknowledge the somewhat unusual circumstances of this case, we conclude that the trial court's disposition does not constitute an abuse of discretion.

[14] The judgment of the trial court is affirmed.

Kirsch, J., and May, J., concur.